```
                          UNITED STATES DISTRICT COURT
                              DISTRICT OF PUERTO RICO

ARTURO HERNÁNDEZ,

     Plaintiff,
                                         Civil No. 06-1799 (JAF)
     v.

JOHN POTTER, UNITED STATES
POSTMASTER GENERAL,

     Defendant.
```

**OPINION AND ORDER**

Plaintiff Arturo Hernández brings this action against Defendant John Potter, United States Postmaster General, alleging violations of the Rehabilitation Act of 1973 ("the Rehabilitation Act"), 29 U.S.C. § 791, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1991a. Docket No. 11. Plaintiff argues that Defendant failed to provide reasonable accommodations for him and discriminated against him on the basis of disability and sex. Id. Defendant moves for summary judgment under Federal Rule of Civil Procedure 56(c). Docket Nos. 30, 31. Plaintiff opposes, Docket No. 38, and Defendant replies, Docket No. 47.

**I.**

**Factual and Procedural Synopsis**

Civil No. 06-1799 (JAF)                                                    -2-

We derive the following factual summary from Defendant's statement of uncontested facts, as well as the parties' motions and exhibits.[1]  Docket Nos. 31. 32, 38, 39, 40, 47.

The Federal Employees Compensation Act ("FECA"), 5 U.S.C. §§ 8108-193, establishes a workers' compensation program for federal employees who suffer a disability resulting from an injury on the job. Under this program, federal agencies must place employees in their former positions or equivalent positions once they have recovered from compensable injuries. 5 U.S.C. § 8151. To comply with FECA, the United States Postal Service ("USPS") developed the "Rehabilitation Program," an injury compensation program that reassigns injured employees to rehabilitation positions. Rolland v. Potter, 492 F.3d 45, 48 (1st Cir. 2007).

---

[1] Local Rule 56(c) requires that parties opposing summary judgment submit a statement admitting, denying or qualifying the moving party's statement of uncontested facts, with reference to each numbered paragraph. The opponent must support each denial or qualification with a citation to the record. Id. Plaintiff's statement of uncontested facts does not comply with the local rules. See Docket No. 38. Instead, he provides a list of the paragraph numbers of the disputed facts, without stating why he disputes these facts or providing citations to the record. See id. Therefore, we generally accept Defendant's statement of material facts as uncontested. See Sánchez-Figueroa v. Banco Popular de P.R., 527 F.3d 209, 212 (1st Cir. 2008) (upholding district court's decision to accept defendant's statement of facts as uncontested where Plaintiff had failed to comply with local rules). However, where we are able to discern that Plaintiff has provided documentary evidence to support his allegations, we note these allegations as part of the record.

Civil No. 06-1799 (JAF)                                                    -3-

Plaintiff is a resident of San Juan, Puerto Rico. He began working as a letter carrier for the USPS in 1993. On August 17, 1994, while making his deliveries, Plaintiff was robbed and assaulted. As a result of the injuries he suffered in the assault, Plaintiff was unable to return to full-time work until May 1998. At that point, Plaintiff was placed in the Rehabilitation Program. As part of his assignment to the Rehabilitation Program, Plaintiff's medical restrictions were documented by an evaluating physician, who indicated that Plaintiff was restricted from lifting even light weights, reaching, pushing and pulling, and driving, other than driving to and from work with proper precaution. See Docket No. 32-2, Ex. A-D.

On April 17, 2000, Plaintiff was accepted into the Associate Supervisor Program ("ASP"), a sixteen-week training program. On August 23, 2000, the ASP graduates received their assignments. Plaintiff was assigned to the Toa Alta Post Office, which is located twenty-two miles from Plaintiff's home, and, Plaintiff claims, required a ninety-minute commute each way. Plaintiff later reported that eight members of the ASP program received the assignments they had requested, while nine members received assignments so far away that some had to drive three hours to get to their stations. Plaintiff claims that five of the nine eventually got their assignments changed to closer offices.

Civil No. 06-1799 (JAF)                                                      -4-

On August 29, 2000, Plaintiff was reassigned to the Caguas Post Office, which is less than nine miles from Plaintiff's home. However, Plaintiff was unhappy with this assignment because it was night shift, and he had trained to do customer service, which is only available during the daytime.

On September 7, 2000, Plaintiff orally requested a reassignment to the Cupey Post Office from Virginia Matías, an Operations Manager. The Cupey office is located less than two miles from Plaintiff's home. Plaintiff sought to switch with another employee who was assigned to Cupey and was willing to trade positions. Matías indicated that she could not give Plaintiff an answer immediately, and that she had to check with management. Plaintiff claims that during the conversation, Matías said that she could not believe he had been accepted into the ASP program if he was a Rehabilitation Program employee. Matías did not inform Plaintiff of the status of his transfer request so, on September 11, 2000, Plaintiff reported to the Carolina office instead of the Caguas office.

On September 15, 2000, Plaintiff wrote to George Ortiz, Manager of Human Resources, seeking a transfer from the Caguas office to the Cupey office. Docket No. 32-3, Ex. A-J. In the request, Plaintiff stated as his reason for needing accommodation: "I am presently under the Department of Labor Office of Workers Compensation Program and

Civil No. 06-1799 (JAF)                                                     -5-

associated with a person with a disability (down sindrome) [sic] under my care." Id. This request was apparently denied.

On October 4, 2000, Matías sent Plaintiff an official letter of warning in lieu of a seven-day suspension. Docket No. 32-3. Ex. A-H. The letter stated that Plaintiff had failed to follow instructions following his September 7 request for a transfer by failing to report to the Caguas Station while waiting for the result of his request. Id.

On October 7, 2000, Plaintiff was assigned to work a daytime shift as customer services supervisor at the Fernández Juncos Station. Docket No. 32-3, Ex. A-N. This office is approximately seven and a half miles from Plaintiff's home.

At some point, Plaintiff applied for the position of Supervisor of Customer Services at the Cupey station.[2] On October 19, 2000, Plaintiff's application was rejected.

On October 26, 2000, Plaintiff sent a letter to the USPS Injury Compensation Office in support of his request for reasonable accommodation. Docket No. 32-2, Ex. A-E. He explained that he needed reassignment because of his status as a Rehabilitation Program employee. Id. The letter did not provide any additional medical information or documentation for the requested accommodation. Id.

---

[2] We are unable to find Plaintiff's application in the record, as the exhibit number is missing.

1    Plaintiff claims that at some point in October 2000, he spoke
2    with Evaristo Guzmán, the Equal Employment Opportunity ("EEO")
3    Counselor for the USPS. Plaintiff told Guzmán about the letter of
4    warning and his perception that management was trying to force him to
5    resign his supervisor position because of animus towards him as a
6    Rehabilitation Program employee. Plaintiff claims that Guzmán
7    arranged a mediation to discuss these issues. The mediation was held
8    on December 19, 2000, but no agreement was reached.
9    On November 16, 2000, a physician evaluated Plaintiff and
10   indicated that Plaintiff could drive to work but should avoid driving
11   for longer than thirty minutes at a time. Docket No. 39-14.
12   On December 11, 2000, Plaintiff wrote another letter to several
13   USPS managers requesting a decision in writing on his request for
14   accommodation. Docket No. 39-12, Ex. 9. This letter did not give any
15   additional medical reasons for the requested accommodation. Id.
16   On January 29, 2001, Plaintiff filed a complaint with the EEO
17   Compliance and Appeal Center requesting mediation relating to his
18   request for a medical accommodation. On March 13, 2001, Guzmán sent
19   Plaintiff a letter denying Plaintiff's claim as untimely. Docket
20   No. 32-3, Ex. A-Q. The letter stated that it had been 118 days since
21   Plaintiff received the letter of warning, and Plaintiff was required
22   to contact the EEO office within forty-five days of the incident.
23   Id. The letter also stated that mediation would be inappropriate

because Plaintiff had already had a mediation with management officials in December 2000 with no result. Id.

On March 23, 2001, Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and failure to accommodate. Docket No. 32-3, Ex. A-R. On May 19, 2006, Plaintiff received a final decision from the EEOC denying his discrimination claims.

On August 17, 2006, Plaintiff filed the present complaint in federal district court, Docket No. 1, and on April 17, 2007, Plaintiff filed an amended complaint, Docket No. 11. On August 11, 2008, Defendant moved for summary judgment. Docket Nos. 30, 31. Plaintiff opposed on September 23, 2008, Docket No. 38, and Defendant replied on October 1, 2008, Docket No. 47.

**II.**

**Summary Judgment Standard under Rule 56(c)**

We grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The moving party carries the burden of establishing that

there is no genuine issue as to any material fact; however, the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 331 (1986). The burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. Id. at 331.

In evaluating a motion for summary judgment, we must view the record in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). However, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### III.

### Analysis

Plaintiff alleges that Defendant violated the Rehabilitation Act by failing to accommodate his disability and by discriminating against him on the basis of both disability and sex. Docket No. 11. Defendants argue that we must grant summary judgment in their favor because (1) Plaintiff's filing with the EEOC was untimely; (2) Plaintiff cannot establish a prima facie case of failure to accommodate; (3) Plaintiff cannot establish a prima facie case of

disability discrimination or sex discrimination; and (4) Plaintiff cannot establish a prima facie case of retaliation. Docket No. 31. We address these arguments in turn.

**A.   Timeliness of EEOC Filing**

Defendant asserts that Plaintiff failed to timely file his complaint with the EEOC because he did not contact an EEOC counselor within forty-five days of the allegedly discriminatory conduct. Docket No. 31. Plaintiff asserts that he orally contacted the USPS counselor within the forty-five day period. Docket No. 38.

Exhaustion of administrative remedies is not required under the Rehabilitation Act. Prescott v. Higgins, 538 F.3d 32, 44 (1st Cir. 2008) (citing Brennan v. King, 139 F.3d 258, 268 n.12 (1st Cir. 1998)). Therefore, we deny Defendant's motion for summary judgment with respect to Plaintiff's Rehabilitation Act claims.

Title VII requires federal employees to exhaust administrative remedies provided by their federal agency employer before bringing a claim in district court. 42 U.S.C. § 2000e-16(c); Morales-Vallellanes v. Potter, 339 F.3d 9, 18 (1st Cir. 2003); Bonilla v. Muebles J.J. Álvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999). Employees must, inter alia, contact an EEOC counselor within forty-five days of the discriminatory conduct; however, this period may be extended if the individual shows that he was not notified of or otherwise aware of

the deadline. 29 C.F.R. § 1614.105(a); Velázquez-Rivera v. Danzig, 234 F.3d 790, 794 (1st Cir. 2000).

Here, Plaintiff asserts that he was discriminated against when (1) his September 15, 2000, request for a reasonable accommodation was denied, and (2) he was issued a letter of warning on October 4, 2000. He asserts he brought these concerns to Evaristo Guzmán, a USPS dispute resolution manager, in October 2000. Docket No. 38; see Docket No. 40-2, Ex. 6. Defendant does not argue that Guzmán was not the right person to contact; rather, he contends that Plaintiff's deposition testimony is self-serving and should not be credited. Docket No. 47. However, Defendant has not offered any evidence to contradict Plaintiff's allegations, such as an affidavit from Guzmán stating that Plaintiff never contacted him. See id. Accordingly, we find that an issue of material fact remains with respect to whether Plaintiff exhausted his Title VII claims.

**B.  Failure to Accommodate**

Plaintiff claims that Defendants failed to provide him with a reasonable accommodation for his disability, in violation of the Rehabilitation Act.[3] Docket No. 11. Defendant argues that Plaintiff

---

[3] Plaintiff does not specify whether he intends to bring claims under Section 501 or Section 504 of the Rehabilitation Act. See Docket No. 11. Because Plaintiff is a federal employee, we analyze his claims under Section 501, which applies to federal departments and agencies. See Bradley v. England, 502 F. Supp. 2d 259, 266-67 (D.R.I. 2007) (noting a circuit split over whether federal employees may seek relief under both Sections, and determining that they may

cannot establish his failure to accommodate claim because, inter alia, Plaintiff's request for accommodation was not clear or specific enough to trigger Defendant's duty to accommodate under the Rehabilitation Act. Docket No. 31.

Like the Americans with Disabilities Act ("ADA"), the Rehabilitation Act both prohibits disparate treatment of disabled individuals and imposes an affirmative duty on employers to offer reasonable accommodations to disabled employees. 29 U.S.C. § 791; Enica v. Principi, 544 F.3d 328, 337-38 (1st Cir. 2008) (citing Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19-20 (1st Cir. 2004)). To establish a claim for failure to accommodate under the Rehabilitation Act, a plaintiff must show that (1) he suffers from a disability within the meaning of the statute, (2) he could perform the essential functions of his job with reasonable accommodations, and (3) despite its knowledge of his disability, his employer did not offer a him reasonable accommodation. Enica, 544 F.3d at 338.

An individual is disabled under the Rehabilitation Act if he has "a physical or mental impairment that substantially limits one or more major life activities," has "a record of such impairment," or is "regarded as having such impairment." 29 U.S.C. § 705(20)(B) (referencing 42 U.S.C. § 12102). To show that an employer has failed to provide a reasonable accommodation, a plaintiff must show that the

---

only bring claims under Section 501).

proposed accommodation is reasonable, that is, that it would have enabled him to perform the job and would have been feasible for the employer. Enica, 544 F.3d at 328. The plaintiff also must show that his request was sufficiently direct and specific and explained how the accommodation was linked to the disability. Id.; see Estades-Negroni v. Assocs. Corp. of N. Am., 377 F.3d 58, 64 (1st Cir. 2004) (requiring ADA request to be express and linked to a disability).

We direct our attention to the third prong, whether Defendant knew of Plaintiff's disability yet failed to accommodate him. Plaintiff claims that Defendant failed to accommodate him by refusing to transfer him from the Caguas Post Office to the Cupey Station, which was substantially closer to his home. Plaintiff's September 15, 2000, request for a reassignment to the Cupey station states as a reason for his request: "I am presently under the Department of Labor Office of Workers Compensation Program and associated with a person with a disability (down sindrome) [sic] under my care." Docket No. 32-3, Ex. A-J. He does not explain what his disability is, other than that he is covered under the USPS' Rehabilitation Program. None of the later documents submitted by Plaintiff provide more information about the nature of Plaintiff's disability, nor did Plaintiff ever communicate his doctor's finding that he could not drive longer than thirty minutes at a time. See Docket No. 32-2, Ex. A-E Docket No. 39-12, Ex. 9. Plaintiff's request does not provide

enough information to give Defendant notice of Plaintiff's disability and his need for accommodation. See Rolland v. Potter, 492 F.3d 45, 48-49 (1st Cir. 2007) (holding that eligibility for the USPS' Rehabilitation Program alone does not establish that a person is disabled for purposes of the Rehabilitation Act). We find Plaintiff's request insufficient to trigger Defendant's duty to accommodate under the Rehabilitation Act. See Estades-Negroni, 377 F.3d at 64.

**C.   Discrimination**

Plaintiff argues that he was discriminated against both because of his sex and because he is disabled. Docket No. 11. Defendant argues that Plaintiff has failed to establish a prima facie case of either kind of discrimination. Docket No. 31.

In evaluating an employment discrimination case alleging disparate treatment, we follow the three-step process outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006). First, the plaintiff must establish a prima facie case of discrimination; next, the defendant has the burden of presenting a legitimate, nondiscriminatory reason for the employment decision; and finally, the plaintiff has the burden of demonstrating that the defendant's asserted reason is mere pretext for discrimination. Id. To establish a prima facie case of discrimination, a plaintiff must show that he belonged to a protected class, that he performed his job

Civil No. 06-1799 (JAF)                                                -14-

satisfactorily, and that he suffered an adverse employment action under circumstances giving rise to an inference of discriminatory intent. Ríos Jiménez v. Principi, 520 F.3d 31, 40-41 (1st Cir. 2008); see Sánchez v. P.R. Oil Co., 37 F.3d 712, 719 (1st Cir. 1994).

In the instant case, Plaintiff has failed to raise an inference that he was discriminated against, either on the basis of disability or sex. First, nine members of Plaintiff's ASP program received assignments so far away that some had to drive three hours to get to their stations, and only five of the nine eventually got their assignments changed to closer offices. The haphazard assignment process indicates poor management, perhaps, but Plaintiff has not demonstrated any link between his job assignment and his disability. Plaintiff urges us to find that Defendant harbored discriminatory animus against Plaintiff because Matías said that she could not believe Plaintiff had been accepted into the ASP program if he was a Rehabilitation Program employee. However, this statement is at worst a stray remark, which is insufficient to create an inference of discriminatory intent. See Laurin v. Providence Hosp., 150 F.3d 52, 58 (1st Cir. 1998) (holding that stray remarks, including statements by decisionmakers unrelated to the decision process itself, are normally insufficient to establish discriminatory animus).

Next, Plaintiff claims that he was the victim of sex discrimination, but provides no evidence to support this claim. In

fact, he asserts that both male and female coworkers received preferential treatment in their assignments, which undercuts his argument that he suffered discrimination on the basis of his sex. Because Plaintiff has failed to establish a prima facie case of discrimination on the basis of disability or sex, we need not go on the second and third steps in the <u>McDonnell Douglas</u> analysis.

Accordingly, we grant Defendant's motion for summary judgment with respect to Plaintiff's discrimination claims.

**IV.**

**<u>Conclusion</u>**

For the reasons stated herein, we **GRANT** Defendant's motion for summary judgment, <u>Docket No. 30</u>, and **DISMISS** Plaintiff's claims, in their entirety, **WITH PREJUDICE**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 11th day of March, 2009.

                                        s/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        Chief U.S. District Judge